IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREA J. CORTESE, : Civil No. 1:26-CV-0209
:
Plaintiff, :
:
v. :
: (Chief Magistrate Judge Bloom)
FRANK BISIGNANO, :
Commissioner of Social Security, :
:
Defendant. :

MEMORANDUM OPINION

I. Introduction

Andrea Cortese filed an application under Title II of the Social Security Act for disability insurance benefits on January 9, 2023. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Cortese was not disabled from her alleged onset date of disability, March 17, 2022, through March 7, 2025, the date of the ALJ's decision.[1]

Cortese now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such

[1] Tr. 14-41.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Cortese filed for disability insurance benefits, alleging disability due to anxiety, depression, obsessive compulsive disorder ("OCD"), chronic fatigue, and Lyme disease.[3] Cortese was 50 years old at the time of her alleged onset of disability, had at least a high school education, and had past work as an assistant therapy aide.[4]

An ALJ held a hearing on Cortese's disability application on February 18, 2025.[5] Cortese and a Vocational Expert ("VE") both appeared and testified at this hearing.[6] Following this hearing, on March 7, 2025, the ALJ issued a decision denying the plaintiff's application for

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 76.
[4] Tr. 34.
[5] Tr. 42-75.
[6] *Id.*

disability benefits.[7] The ALJ first concluded that Cortese had not engaged in substantial gainful activity for a period of 12 continuous months since her alleged onset date.[8] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of Lyme disease, major depressive disorder, generalized anxiety disorder, and OCD, among other severe physical impairments.[9] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10] The ALJ concluded that Cortese's mental health impairments caused only moderate limitations in the four broad areas of mental functioning.[11]

[7] Tr. 14-41.
[8] Tr. 19-20. The ALJ's decision indicates that Cortese did engage in substantial gainful activity between April 1, 2022, and June 30, 2022, and so the ALJ did not include this period in the disability analysis.
[9] Tr. 20. We focus our discussion on the plaintiff's Lyme disease and mental health impairments, as the crux of the plaintiff's appeal is a challenge to the ALJ's mental residual functional capacity determination.
[10] Tr. 20-23.
[11] Tr. 21-23.

Between Steps 3 and 4, the ALJ then concluded that the plaintiff has the residual functional capacity ("RFC") to perform a range of light work with additional limitations, including a limitation to simple instructions and simple work with no production rate pace, simple work-related decisions, occasional changes in a routine work setting, and frequent to occasional interaction with others.[12] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[13] Ultimately, the ALJ concluded that the plaintiff was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Cortese could not perform her past work but found at Step 5 that she could perform the occupations of a marker, routing clerk, and photocopy machine operator.[14] Accordingly, the ALJ found that Cortese had not met the stringent standard prescribed for disability benefits and denied her claim.[15]

---

[12] Tr. 23-24.
[13] Tr. 24-34.
[14] Tr. 35.
[15] Tr. 35-36.

This appeal followed.[16] On appeal, Cortese argues that the ALJ erred in his consideration of the medical opinion evidence.[17] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[18] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[20]

---

[16] Doc. 1.
[17] Doc. 12.
[18] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[19] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[20] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[21]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[22] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[23] The ALJ is not required to use "magic" words, but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[24] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[25]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or

---

[21] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[22] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[23] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[24] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[25] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[26] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[27] In making a disability determination, the ALJ follows a five-step evaluation.[28] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[29]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her

[26] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[27] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[28] 20 C.F.R. §§404.1520(a), 416.920(a).
[29] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

impairment(s)."[30] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[31] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[32]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[33] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[34]

---

[30] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[31] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[32] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[33] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[34] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

### B. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[35] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[36] Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[37] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[38]

---

[35] 20 C.F.R. § 404.1520c(c).
[36] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).
[37] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[38] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[39] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[40] Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[41] On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[42]

### C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility

---

[39] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[40] *Mason*, 994 F.2d at 1066.
[41] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[42] *Cummings*, 129 F. Supp. 3d at 214–15.

determinations.[43] Our review of those determinations is deferential.[44] However, the ALJ is required to "specifically identify and explain what evidence he found not credible and why he found it not credible."[45] An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[46] As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[47]

In accordance with the Social Security Rulings and Regulations, an ALJ must follow a two-step process to evaluate a claimant's reported symptoms: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire

---

43 *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
44 *Id.*
45 *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
46 *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).
47 *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

administrative record.[48] This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[49] To assist in the evaluation of a claimant's subjective symptoms, the Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[50]

D. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[51] Judged against this

---

[48] SSR 16-3p.
[49] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[50] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.
[51] *Biestek*, 139 S. Ct. at 1154.

deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Cortese first asserts that the ALJ erred in his consideration of the medical opinion evidence. She contends that the ALJ erroneously found the opinions of her treating providers—Licensed Clinical Social Worker ("LCSW") Joanne Weiss and psychiatrist Robert Bransfield, M.D.—unpersuasive. LCSW Weiss opined in May of 2023 and again in March of 2024 that Cortese was unable to perform any work-related activities due to issues with concentration and memory, an inability to handle stressors, and extreme mental and emotional distress and dysregulation.[52] Weiss based this opinion on her treatment sessions with Cortese, who consistently exhibited a "dull level of alertness, extreme sadness, a teary affect, negative loops of self-criticism, and hopelessness and anxiety."[53]

The ALJ found Weiss' opinions not persuasive.[54] He reasoned that Weiss' opinions were primarily based on Cortese's subjective symptoms,

---

[52] Tr. 381-82, 473-74.
[53] Tr. 473.
[54] Tr. 29-30.

did not provide an objective assessment of Weiss' functional limitations, were not consistent with the conservative level of mental health treatment Cortese received, and were not consistent with other clinical findings in the record showing Cortese exhibited clear speech, coherent and logical thought processes, intact memory skills, normal attention and concentration, and intact insight and judgment.[55]

As for Dr. Bransfield's opinions, Dr. Bransfield opined in July of 2023 that Cortese was unable to perform hygiene care, clean, cook, shop, travel, provide care to others, and attend in person activities due to her behavioral conditions.[56] Dr. Bransfield's March 2024 opinion set forth extreme limitations in Cortese's abilities to handle complex instructions, cope with simple work related stressors, perform activities within a schedule, maintain attendance, and maintain concentration, persistence and pace.[57]

---

[55] *Id.*
[56] Tr. 559-60. As the plaintiff notes, the ALJ incorrectly stated that this opinion was from September of 2023.
[57] Tr. 461-62.

The ALJ found Dr. Bransfield's July 2023 opinion partially persuasive to the extent it was consistent with Cortese's symptomology and some abnormal clinical findings.[58] But the ALJ reasoned that the degree of limitation opined by Dr. Bransfield was not consistent with or supported by the objective findings overall.[59] As for the March 2024 opinion, the ALJ concluded that this opinion was not persuasive because the level of limitation was not well explained, nor was it consistent with objective clinical findings during the relevant time and the conservative level of treatment Cortese received.[60]

Instead, the ALJ found the opinion of state agency consultant Melissa Franks, Psy. D., generally persuasive.[61] Dr. Franks opined in May of 2023 that Cortese suffered mild to moderate limitations in mental functioning.[62] The ALJ reasoned that Dr. Franks' opinion was supported by reference to mental status findings that showed no significant deficits and was consistent with Cortese's conservative mental health

---

[58] Tr. 32.
[59] *Id.*
[60] Tr. 30.
[61] Tr. 33.
[62] Tr. 83-84.

treatment.[63] The ALJ specifically rejected Dr. Franks' limitation to one- or two-step tasks, reasoning that such a limitation was not consistent with Cortese's treatment and activities of daily living.[64]

We find no error with the ALJ's treatment of this opinion evidence. The ALJ was faced with several opinions regarding Cortese's mental health limitations, all of which contained varying degrees of limitation. The ALJ noted that while some of these opinions contained more restrictive limitations, those limitations were not consistent with objective clinical findings during the relevant period. As the plaintiff herself highlights, the record in this case contained both normal and abnormal findings, as she notes "a mixed set of exams showing normal concentration, with others identifying concentration deficits."[65] Indeed, the ALJ recounted the varying findings in the record regarding the plaintiff's mental health, some abnormal and some unremarkable.[66]

---

[63] Tr. 33.
[64] *Id.*
[65] Doc. 12 at 18 (citing Tr. 340, 474, 476, 501, 532, 553, 564, 615, 629, 639, 643, 664, 696, 705).
[66] Tr. 26-27.

Ultimately, the ALJ found Dr. Franks' opinion to be more persuasive, reasoning that the limitations in that opinion were more consistent with and supported by the longitudinal record. The ALJ explained why he discounted the more restrictive limitations set forth by LCSW Weiss and Dr. Bransfield with citations to records that contradicted the level of limitation opined by these providers. While the plaintiff contends that this assessment of the medical opinion evidence was incorrect, her argument invites us to reweigh the evidence that was before the ALJ, which we may not do.[67]

Cortese also asserts that the ALJ improperly relied on her activities of daily living and argues that her testimony established greater limitations than found by the ALJ.[68] But the ALJ appropriately considered Cortese's activities of daily living as one factor in determining that Cortese was not as limited as she alleged.[69] The ALJ discussed the plaintiff's activities of daily living and her testimony, at which time she reported an ability to manage her finances, use the internet, prepare

---

[67] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).
[68] Doc. 9 at 14-15.
[69] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

simple meals, get along with others, and follow written and spoken instructions.[70] Ultimately, the ALJ found that the plaintiff's activities of daily living did not support her allegations of disabling limitations. The ALJ did not rely on these findings alone; rather, the decision recounted these findings and considerations, along with the objective medical evidence and opinions, to conclude that the plaintiff was not as limited as she alleged. Again, Cortese's argument essentially amounts to a request to reweigh the evidence, which we may not do.[71]

In sum, we find that the ALJ considered all the evidence and adequately explained the decision to include or discount certain limitations as established by the evidence. Accordingly, we find no error with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

---

[70] Tr. 28.
[71] *See Chandler*, 667 F.3d at 359.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 23rd day of November 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge